UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERRY RAINS,
      Petitioner,

Case No. 1:16-cv-180

     vs.

Black, J
Litkovitz, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.

**ORDER AND REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in

Chillicothe, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254. (Doc. 1). This matter is before the Court on respondent's motion to dismiss (Doc. 8) with

state-court record (Doc. 7); petitioner's memorandum in opposition to the motion to dismiss (Doc.

14); respondent's reply memorandum and notice of supplemental filing of state-court record

(Docs. 16, 17); petitioner's motion for leave to respond to respondent's reply (Doc. 18), which is

hereby **GRANTED**; petitioner's supplemental memoranda opposing the motion to dismiss (Docs.

19, 20); and petitioner's reply to respondent's notice of supplemental filing of state-court record

(Doc. 21).[1]

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the Ohio Court of Appeals, First

Appellate District:[2]

---

[1] Also pending before the Court for ruling is petitioner's non-dispositive motion requesting the appointment
of counsel (Doc. 13), which is **DENIED** herein as moot.

[2] The factual findings of the state appellate court are entitled to a presumption of correctness in the
absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d
487, 493-94 (6th Cir. 2004).

> After being restored to competency and following the entry of a guilty plea, defendant-appellant, Jerry Rains, was convicted of desecration, carrying concealed weapons, improperly handling firearms in a motor vehicle, discharging a firearm on or near prohibited premises with an accompanying gun specification, and having weapons while under a disability with an accompanying gun specification. While sitting in his car, Rains had fired 40 rounds from a P-95 Ruger 9-mm handgun into a local church because he was "tired of hearing about Jesus." Although he faced a maximum prison term of 17 years, the trial court only sentenced him to an aggregate prison term of 13 years.

(Doc. 7, Ex. 13, p. 1, at PAGEID#: 56) (footnotes omitted).

### State Conviction and Sentence

In May 2009, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of desecration in violation of Ohio Rev. Code § 2927.11(A)(4) (Count 1); one count of carrying a concealed weapons in violation of Ohio Rev. Code § 2923.12(A)(2) (Count 2); one count of improperly handling firearms in a motor vehicle in violation of Ohio Rev. Code § 2923.16(A) (Count 3); one count of discharge of a firearm on or near prohibited premises in violation of Ohio Rev. Code § 2923.162(A)(2) (Count 4); and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(5) (Count 5). Counts 4 and 5 each carried firearm specifications. (Doc. 7, Ex. 1).

On September 4, 2009, petitioner entered a guilty plea to all counts of the indictment and to the second firearm specification attached to Counts 4 and 5 in exchange for the dismissal of the first firearm specification attached to Counts 4 and 5. (Doc. 7, Ex. 3). After holding a hearing and concluding that petitioner made a knowing, intelligent, and voluntary plea of guilty, the trial court accepted petitioner's guilty plea. (*See* Doc. 7, Exs. 4-5 & Trial Tr. 1-30, at PAGEID#: 141-70). The Court also referred petitioner for a psychiatric examination for purposes of determining whether petitioner should be confined at "another hospital" or a prison following

2

sentencing. (Doc. 7, Ex. 6 & Trial Tr. 20, 28-29, at PAGEID#: 160, 168-69).

On October 2, 2009, petitioner was sentenced to concurrent one-year prison terms for the offenses charged in Counts 1 through 3; five-year prison terms for the offenses charged in Counts 4 and 5; and three-year prison terms for the two firearm specifications, which the court merged. The sentences for Counts 4, 5 and the merged firearm specifications were to be served consecutively, for an aggregate prison term of 13 years. (Doc. 7, Ex. 7). The final judgment entry of sentence was filed on October 6, 2009. (*Id.*).

### Direct Appeal

Petitioner, through new counsel, timely appealed to the Ohio Court of Appeals, First Appellate District. (Doc. 7, Ex. 8).[3] Petitioner asserted as the sole assignment of error that "[t]he court erred in imposing a sentence upon the defendant/appellant that was an abuse of discretion." (Doc. 17, Exs. 1, 2). On August 13, 2010, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment. (Doc. 7, Ex. 13). Petitioner did not pursue a further appeal to the Ohio Supreme Court.

### State Post-Conviction Proceedings

Petitioner filed a number of *pro se* motions following his conviction and sentencing:

- February 3, 2010: "motion for no bill/negligence" and a "motion for ineffective counsel" (Doc. 7, Exs. 14, 15).

- March 28, 2011: motion for appointment of counsel (Doc. 7, Ex. 16).

- February 14, 2012: motion for re-sentencing pursuant to Ohio Crim. R. 32 (Doc. 7, Ex. 17).

- June 25, 2012: motion for a final disposition of this matter (Doc. 7, Ex. 18).

---

[3] Petitioner, under the mistaken belief that his attorney had failed to file a notice of appeal on his behalf, filed a *pro se* motion for leave to file a delayed appeal. (Doc. 7, Ex. 9). The Ohio Court of Appeals denied the motion as moot because petitioner already had "a direct appeal pending as of right under appeal C-090721." (Doc. 7, Ex. 10).

The trial court did not rule on any of those motions.

On January 16, 2013, petitioner moved for judicial release. (Doc. 7, Ex. 19). The court denied that motion in an entry filed October 23, 2013. (Doc. 7, Ex. 20).

On October 3, 2013, petitioner filed a *pro se* motion to withdraw his guilty plea, which was denied by the trial court on October 22, 2013. (Doc. 7, Exs. 21, 22). On March 14, 2014, petitioner filed a motion for leave to file a delayed appeal to the Ohio Court of Appeals, First Appellate District. (Doc. 7, Ex. 23). In the motion, petitioner averred as "cause" for his delay in filing that he did not receive a copy of the trial court's ruling from the clerk of courts and first learned of the denial of his motion after he filed an application for a writ of mandamus with the Ohio Supreme Court "seeking a Judgment on that Motion" and "saw a copy of the Judgment attached" to the State's reply to his pleading. (*Id.*, at PAGEID#: 85). A review of the on-line docket records maintained by the clerk of the Ohio Supreme Court reveals that petitioner did indeed file a mandamus petition on January 7, 2014 in Case No. 14-0031, requesting that the trial court be ordered to rule on his motion to withdraw his guilty plea. On January 17, 2014, the State responded by filing a "Suggestion of Mootness," which included a copy of the trial court's October 22, 2013 entry overruling the motion. The Ohio Supreme Court dismissed the mandamus petition as moot on March 12, 2013.[4] Two days later, petitioner's motion for leave to file a delayed appeal was filed with the Ohio Court of Appeals.

The Ohio Court of Appeals was apparently persuaded by petitioner's argument and granted petitioner's request for leave to pursue a delayed appeal. (Doc. 7, Ex. 24). In his appellate brief, petitioner presented the following assignments of error:

---

[4] The on-line docket records for the mandamus case can be found at the following website link: http://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2014/0031.

1. The trial court erred and violated appellant's right[s] to due process and equal protection under the law, when it denied his motion to withdraw guilty plea without a hearing.

2. The trial court erred when it ignored the clear manifest injustice set forth in appellant's motion to withdraw guilty plea, which negates the validity of the plea.

(Doc. 7, Ex. 27).[5]  On December 10, 2014, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment.   (Doc. 7, Ex. 31).[6]

Six months later, on June 5, 2015, petitioner filed a notice of appeal and motion for delayed appeal to the Ohio Supreme Court.   (Doc. 7, Exs. 32, 33).   In his motion requesting leave to file a delayed appeal, which was apparently prepared with the assistance of a "jailhouse attorney," petitioner claimed as cause for his delay in filing that he suffers from a mental illness, which renders him "unable to comprehend, understand or perfect any legal work in [his] own behalf." (Doc. 7, Ex. 33, at PAGEID#: 113).   He contended that because of his "mental health condition," he had to "completely depend" on a "jailhouse attorney" to process his appeal in a timely manner and "did not know that [his] appeal . . . was late until another jailhouse attorney informed [him] that [he] was pa[s]t the filing deadline."   (*Id.*).   On July 22, 2015, the Ohio Supreme Court summarily denied petitioner's motion for delayed appeal.   (Doc. 7, Ex. 34).

---

[5] Petitioner also filed a motion for appointment of counsel, which was denied.   (Doc. 7, Exs. 25, 26).   In addition, the State filed a memorandum responding to petitioner's appellate brief, and petitioner attempted to file a reply to that memorandum.   (Doc. 7, Exs. 28, 29).   The Ohio Court of Appeals struck petitioner's reply because the case was on the accelerated calendar and reply briefs are not permitted in such cases unless ordered by the court. (Doc. 7, Ex. 30).

[6] It is noted that on September 2, 2014, during the pendency of petitioner's appeal before the Ohio Court of Appeals, petitioner filed another motion for judicial release with the trial court.   (Doc. 7, Ex. 35).   The motion was denied on September 8, 2014.   (Doc. 7, Ex. 36).

### Federal Habeas Corpus

The instant federal habeas corpus action commenced on January 2, 2016.[7] (*See* Doc. 1, at

PAGEID#: 15). In his petition, which was apparently prepared with the assistance of a "jailhouse

attorney," petitioner alleges three grounds for relief:

> **Ground One:** Trial counsel provided ineffective assistance of counsel for failing
> to request an allied offense analysis for offenses discharge a firearm and improper
> handeling [*sic*] of a firearm from a motor vehicle in violation of the petitioner's 6th
> and 14th Amendment rights to the United States Constit[uti]on.
>
> **Ground Two:** Trial counsel provided ineffective assistance of counsel for failing
> to argue that the offense of having weapons under disability was invali[]d for
> failing to prove that the defe[nd]ant was served and adjudicated as a mental
> defective in violation of the petitioner's 6th and 14th Amendment rights to the
> United States Constitution.
>
> **Ground Three:** Trial counsel provided ineffective assistance of counsel by failing
> to correctly advise his client of his defenses prior to accepting his plea in violation
> of the petitioner's 6th and 14th Amendment rights to the United States
> Constitution.

(Doc. 1, at PAGEID#: 16).

Respondent has filed a motion to dismiss the petition. (Doc. 8). Respondent contends

that the petition is subject to dismissal with prejudice on procedural grounds. Specifically,

respondent argues that the petition is barred from review because it is time-barred under the

applicable one-year statute of limitations governing federal habeas petitions set forth in 28 U.S.C.

§ 2244(d) and, alternatively, because petitioner's grounds for relief are procedurally defaulted and

---

[7] The petition was stamped as "filed" on January 6, 2016. (Doc. 1). Petitioner avers in the petition that he placed it in the prison mailing system for delivery to the Court on January 2, 2015. (*Id.*, at PAGEID#: 15). Given the filing date of over a year later, the undersigned finds that petitioner's reference to the year "2015" in the pleading filed at the beginning of the new year was a typographical error and that the petition was actually submitted for mailing on January 2, 2016. It is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Here, the undersigned assumes, absent evidence to the contrary, that the petition was "filed" under the prison mail-box rule on January 2, 2016, as petitioner has averred.

waived.   Petitioner opposes the motion to dismiss.   (*See* Docs. 14, 18, 19).

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 8) SHOULD BE GRANTED BECAUSE HIS CLAIMS FOR RELIEF LACK MERIT

As discussed below, it appears that respondent's motion to dismiss based on procedural bars to review has merit to the extent that it appears from the record that (1) the instant petition was filed after the expiration of the applicable one-year statute of limitations and (2) petitioner's claims for relief were procedurally defaulted in the state courts.   However, the petitioner has presented arguments suggesting that the petition may be timely under equitable tolling principles and that cause may exist to excuse his procedural default of his claims for federal habeas relief.   Because the question of whether or not the petition is procedurally barred from review is a close one, the undersigned finds that it would be more expeditious and efficient for the Court to directly address the merits of petitioner's grounds for relief rather than pursue further inquiry into the procedural issues.   Upon review of the record and the parties' pleadings, the undersigned concludes that the petition is subject to dismissal because petitioner is not entitled to habeas relief based on the merits of his claims.

### A. Procedural Bars To Review

### 1. Statute of Limitations

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

7

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this case, as the respondent has argued in the motion to dismiss, it appears that petitioner's grounds for relief are governed by the one-year statute of limitations set forth in § 2244(d)(1)(A) because they are based on errors that allegedly occurred before or during the state plea-taking proceeding, which could have been discovered in the exercise of due diligence before petitioner's conviction became final by the conclusion of direct review or expiration of time for seeking such review. Petitioner's conviction became final on September 27, 2010, when the 45-day period expired for filing a timely appeal to the Ohio Supreme Court from the court of appeals' August 13, 2010 direct appeal decision. *See* Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a)(1). The statute commenced running on September 28, 2010, one day after petitioner's conviction became final, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later absent application of statutory or equitable tolling principles.

During the one-year limitations period that began on September 28, 2010, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. §

8

2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4

(2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling

provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can

only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid*

*v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired,

state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Id.*

In this case, petitioner filed five motions with the trial court that were never ruled on: a

"motion for no bill/negligence" and a "motion for ineffective counsel" on February 3, 2010 (Doc.

7, Exs. 14, 15); a motion for appointment of counsel on March 28, 2011 (Doc. 7, Ex. 16); a motion

for re-sentencing pursuant to Ohio Crim. R. 32 on February 14, 2012 (Doc. 7, Ex. 17); and a

motion for a final disposition of this matter on June 25, 2012 (Doc. 7, Ex. 18). Petitioner is unable

to prevail on any argument that those motions have served to indefinitely toll the limitations period

because they have remained pending before the trial court since the first motions were filed in

February 2010. As respondent has pointed out in the return of writ (*see* Doc. 8, p. 6 n.3, at

PAGEID#: 188), under Ohio law, when a trial court fails to rule on a motion, it must be presumed

that the motion was denied. *See State v. Olah*, 767 N.E.2d 755, 760 n.2 (Ohio Ct. App.

2001) (and Ohio cases cited therein) (applying the presumption to an outstanding motion in a

criminal case that "[w]hen a trial court fails to rule on a motion, the motion will be considered

denied"); *State v. Crawford*, No. 25506, 2013 WL 5532183, at \*2 (Ohio Ct. App. Oct.4,

2013) (same); *see also Edwards v. Warden, Ross Corr. Inst.*, No. 1:08cv850, 2009 WL 6600255,

at \*5 (S.D. Ohio Dec. 17, 2009) (Report & Recommendation) (applying the presumption set forth

in *Olah* in rejecting the contention that the one-year statute of limitations governing federal habeas

petitions was "indefinitely toll[ed]" by a state post-conviction petition that was never ruled on by

9

the trial court), *adopted*, 2010 WL 2519659 (S.D. Ohio June 17, 2000).

The question then becomes by what date were the motions presumptively denied for tolling purposes? Under the circumstances presented here, the Court presumes that they were denied by October 22, 2013, the date the trial court denied petitioner's *pro se* motion to withdraw his guilty plea, which was filed on October 3, 2013. In the motion to withdraw his guilty plea, petitioner essentially alleged the same claims of ineffective assistance of trial counsel, insufficient evidence, and void sentence for allied offenses of similar import that he had asserted in his earlier-filed "motion for no bill/negligence" and "motion for ineffective counsel" filed in February 2010 and "motion for re-sentencing" filed in February 2012. By then, the earlier-filed motions had already been pending for a substantial period of time. Therefore, it must be presumed that they were denied by the time the trial court issued its ruling in October 2013 denying petitioner's motion to withdraw his guilty plea based on the same arguments.

The Court assumes in petitioner's favor that his motions "for no bill/negligence," "for ineffective counsel," and "for re-sentencing" were properly filed applications for state post-conviction relief or other collateral review,[8] which tolled the running of the statute of

---

[8] Although petitioner also filed motions for appointment of counsel, for a "final disposition" of petitioner's motion for re-sentencing, and for judicial release, those motions do not constitute "properly filed" petitions for state post-conviction relief for statutory tolling purposes. A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing. *Artuz v. Bennett,* 531 U.S. 4, 8 (2000). Under Ohio law, a petition for post-conviction relief must state the grounds for relief relied upon and ask the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. Ohio Rev. Code § 2953.21(A)(1)(a). Petitioner's motions for appointment of counsel, for "final disposition," and for judicial release do not seek review of the judgment of conviction or sentence and do not satisfy the requirements of the Ohio statute to qualify as "properly filed" petitions for post-conviction relief. *See, e.g., Voravongsa v. Wall,* 349 F.3d 1, 4-6 (1st Cir. 2003) (request for counsel was not a request for post-conviction relief under state post-conviction law requiring a specific prayer for relief from judgment); *Hardiman v. Galaza,* 58 F. App'x 708, 710 (9th Cir. 2003) (petition for writ of mandamus is not an application for state post-conviction or other collateral review of the pertinent judgment within the meaning of § 2244(d)(2)); *Moore v. Cain,* 298 F.3d 361, 367 (5th Cir. 2002) (mandamus application seeking order directing trial court to perform its duty did not seek review of judgment and was not a properly filed application for post-conviction relief or other collateral review for statutory tolling under § 2244(d)(2)); *Beery v. Ault,* 312 F.3d 948, 951 (8th Cir. 2002) (holding a "request for post-conviction relief counsel . . . does not constitute a properly filed application for

limitations under § 2244(d)(2) until the trial court issued its decision on October 22, 2013 denying

petitioner's motion to withdraw his guilty plea.[9]   Because the motions "for no bill/negligence"

and "for ineffective counsel" filed in February 2010 were pending before the trial court at the time

petitioner's conviction became "final" in September 2010, it must be assumed that the statute was

tolled and did not begin to run until November 22, 2013, one day after the 30-day period expired

for filing a timely appeal to the Ohio Court of Appeals from the trial court's October 22, 2013

entry.   *Cf. Holbrook v. Curtin,* ___ F.3d ___, No. 14-1247, 2016 WL 4271875, at *3-6 (6th Cir.

Aug. 15, 2016) (holding that the term "pending" for statutory tolling purposes includes the time in

which the petitioner could have pursued a further appeal from the denial of post-conviction relief

in the state courts); *see also Harper v. Warden, Belmont Corr. Inst.*, No. 2:14cv1220, 2015 WL

3867262, at *8 & n.3 (S.D. Ohio June 23, 2015) (Report & Recommendation) (and numerous

cases cited therein) (taking into account for statutory tolling purposes the 45-day period in which

the petitioner could have sought leave to appeal a state post-conviction ruling to the Ohio Supreme

Court), *adopted*, 2015 WL 4538566 (S.D. Ohio July 27, 2015), *appeal filed*, No. 15-3958 (6th Cir.

---

State post-conviction . . . review and "there is no federal precedent for treating a motion for appointment of counsel as a properly filed application for post-conviction relief"); *Dunn v. Jackson*, No. 3:03cv133, 2005 WL 1067688, at *4 (S.D. Ohio May 4, 2005) (Report & Recommendation), *adopted*, 2005 WL 1935674 (S.D. Ohio Aug. 5, 2005) (petitioner's state-court motion to appoint counsel to reopen direct appeal did not toll running of statute of limitations because the motion did not seek post-conviction or collateral relief of the type described in 28 U.S.C. § 2244(d)(2), but merely sought appointment of counsel as a first step towards seeking such relief).   *See also Cannon v. Bunting*, No. 5:13cv981, 2014 WL 6687220, at *9 (N.D. Ohio Nov. 26, 2014) (holding that the petitioner's motion for judicial release did not toll the statute of limitations "because it was not a motion in which [the petitioner] sought review of his sentence"); *Imburgia v. Bradshaw*, No. 1:09cv2009, 2009 WL 6366761, at *3 (N.D. Ohio Dec. 9, 2009) (Report & Recommendation), *adopted*, 2010 WL 1628054, at *4 (N.D. Ohio Apr. 22, 2010) (holding in accordance with numerous other cited cases that an "application for judicial release . . . did not toll running of the AEDPA limitations period, as it did not seek collateral review of the underlying conviction or sentence that resulted in petitioner's incarceration").

   [9] Respondent contends, without explanation or authority, that the only post-conviction motion that qualifies as an application seeking collateral review of the judgment of conviction and sentence was petitioner's motion to withdraw his guilty plea.   As respondent has not explained why petitioner's motions "for no bill/negligence," "for ineffective counsel," and "for re-sentencing" do not qualify as such, the Court gives petitioner the benefit of the doubt in ruling on the motion to dismiss.

11

Sept. 2, 2015).   The statute ran for 112 days until March 14, 2014, when petitioner filed his motion for leave to file a delayed appeal from the trial court's ruling.   *See Board v. Bradshaw,* 805 F.3d 769, 771-76 (6th Cir. 2015) (reaffirming prior precedents—*see, e.g., DiCenzi v. Rose*, 452 F.3d 465, 468-69 (6th Cir. 2006); *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir. 2001); *Anderson v. Brunsman*, 562 F. App'x 426, 430 (6th Cir. 2014); *Applegarth v. Warden, N. Cen. Corr. Inst.*, 377 F. App'x 448, 449 (6th Cir. 2010)—in holding that a motion for delayed appeal to the Ohio Court of Appeals, even if "ultimately unsuccessful," is a "properly filed" motion under Ohio R. App. P. 5 for state collateral relief that serves to toll the limitations period under § 2244(d)(2)).   The Ohio Court of Appeals granted petitioner's motion for leave to file a delayed appeal, but ultimately affirmed the trial court's judgment on December 10, 2014.   The statute resumed running on December 11, 2014 and ran for an additional 176 days, for a total of 288 days, until it was again tolled on June 5, 2015 by the filing of petitioner's motion for leave to file a delayed appeal to the Ohio Supreme Court.   The statute of limitations resumed running on July 23, 2015, one day after the Ohio Supreme Court issued its decision denying the delayed appeal motion,[10] and expired 77 days later on October 8, 2015.   Because petitioner commenced the instant action on January 2, 2016, after the statute of limitations had run its course, his habeas petition is time-barred unless equitable tolling principles apply to excuse the procedural bar to review.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland v. Florida,* 560 U.S. 631, 645 (2010), "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control."   *Hall v. Warden, Lebanon*

---

[10] In *Lawrence v. Florida*, 549 U.S. 327, 333-34 (2007), the Supreme Court made it clear that in contrast to the provision set forth in 28 U.S.C. § 2244(d)(1)(A) for determining the finality of a state conviction, tolling under § 2244(d)(2) does not include the time for seeking review in the United States Supreme Court through a petition for certiorari.

*Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

In this case, petitioner has presented two strong arguments for equitable tolling of the statute of limitations. First, as petitioner pointed out in his motion for delayed appeal to the Ohio Court of Appeals from the trial court's October 22, 2013 decision denying his motion to withdraw his guilty plea (*see* Doc. 7, Ex. 23), petitioner was unaware of the trial court's decision and did not find out about it until after he filed a mandamus petition with the Ohio Supreme Court requesting a ruling on the motion and received the State's responsive pleading filed on January 17, 2014, which included a copy of the trial court's October 22, 2013 entry. Because it thus appears that petitioner did not know that his motion to withdraw his guilty plea had been denied until he received the State's response to his mandamus petition, an argument can be made that equitable tolling principles should apply to extend the tolling period beyond November 21, 2013 (the date the 30-day period expired to file a timely appeal to the Ohio Court of Appeals from the trial court's

13

October 22, 2013 entry) to cover not only the two-month period of time that petitioner remained unaware of the trial court's ruling but also an additional 30 days in which to pursue an appeal from that ruling.   The extension of the tolling period for an additional three months would mean that the petition filed on January 2, 2015 is not time-barred.

Second, petitioner has raised issues regarding his mental competence, which he claims prevented him from filing a timely habeas petition.   The Sixth Circuit has held that mental incompetence or incapacity, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll the one-year limitations period.  *Ata v. Scutt,* 662 F.3d 736, 742 (6th Cir. 2011).   To obtain equitable tolling on that basis, the petitioner must demonstrate that (1) he suffers a mental incompetence or incapacity, and (2) his mental incompetence or incapacity caused his failure to comply with the statute of limitations.  *Id.*  "[A] blanket assertion of mental incompetence is insufficient to toll the statute of limitations.   Rather, a causal link between the mental condition and untimely filing is required."  *Id.* (citing *McSwain v. Davis,* 287 F. App'x 450, 456 (6th Cir. 2008)).

The question is a close one in this case.   Petitioner has shown that he suffers from "chronic disorganized schizophrenia," requiring his "involuntary" commitment on two occasions since his incarceration in order to receive medications to treat his mental condition.  (*See* Doc. 7, Ex. 33). A "jailhouse attorney," who assisted petitioner with his motion for delayed appeal to the Ohio Supreme Court from the Ohio Court of Appeals' December 10, 2014 decision affirming the denial of his motion to withdraw his guilty plea, stated in a supporting affidavit executed on May 27, 2015 that petitioner "is severely mentally disabled, and on medication, and is unable to produce or complete his legal issues."  (*Id.*, "Declaration of Lee D. Williams," at PAGEID#: 122). Apparently, petitioner is being assisted by another "jailhouse attorney" in this proceeding.  (*See*

14

Doc. 14, p. 5, at PAGEID#: 215).    That person has provided the following statement in a pleading

filed in response to the respondent's motion to dismiss:

> In this case, this Petitioner is unable to perfect his appeal without assistance and has
> been using jailhouse attorney[]s throughout the process.    He has been due diligent
> [*sic*] as far as a mentally disabled person can, by requesting that assistance from
> jailhouse attorneys, but on his own, he is completely unable to assist in any manner.
>
> ****
>
> . . . .[T]he Petitioner, who the State admitted is a mental defective, does not have the
> ability to "present a search" for his own brief and/or legal defense.    [H]e has never
> been sent a brief, and has never received the [direct appeal] decision from the court
> of appeals.    Because he was appointed counsel, that decision could have been sent
> to [the attorney], not the petitioner. . . .
>
> ****
>
> The Petitioner was prejudiced by appellate counsel's error in not communicating
> and/or sending his client the decision from the state court of appeals in the direct
> appeal. . . .    In fact, the Petitioner has [not] had . . . communication from appellate
> counsel except for the initial letter.
>
> ****
>
> [T]he petitioner has sever[e] mental challenges and takes ordered medication.    He
> did not obtain the court of appeals['] [direct appeal] decision until late 2015, when
> I, a jailhouse attorney, requested the briefs of both parties and the decision from the
> court of appeals.    The petitioner does not have the memory or mental capacity to
> perfect <u>any</u> basic letter, let alone legal work without serious assistance.
>
> ****
>
> [A]s for . . . the motion to withdraw plea, the petitioner had to depend on others to
> perform his legal work, is on severe medication and could not offer support needed
> to review any legal issue or appeal done by jailhouse attorneys.

(*Id.*, pp. 2-3, 7, at PAGEID#: 212-13, 217).

The assertions made in support of petitioner's motion for delayed appeal to the Ohio

Supreme Court, as well as in response to the respondent's motion to dismiss in the instant action,

raise concerns that further development of the record by way of an evidentiary hearing may be

15

necessary before the equitable tolling issue can be resolved. *See Ata*, 662 F.3d at 742-43 (holding that "[a]lthough an evidentiary hearing need not be provided as a matter of right, an evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling on the basis of mental incompetence which caused the failure to timely file").

Accordingly, in sum, in light of the petitioner's arguments for equitable tolling, the Court is reluctant to find on the basis of the present record that the petition is procedurally barred from review on statute-of-limitations grounds. Rather than decide the close question or hold an evidentiary hearing to further develop the record, the undersigned concludes that it would be a more expedient and efficient use of the Court's time and resources to directly address petitioner's claims for relief on the merits.

### 2. Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). In order to satisfy the fair presentation requirement, the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). Moreover, a claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th

Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

If a petitioner fails to fairly present his constitutional claims through the requisite levels of appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, the petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, the claims are barred from review unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, respondent contends that petitioner's claims for relief are procedurally defaulted to the extent that they are based on evidence in the record and were not raised by petitioner as assignments of error on direct appeal. (*See* Doc. 8, pp. 15-17, at PAGEID#: 197-99). It appears from the record that although petitioner did not assert any claims alleging ineffective assistance of trial counsel on direct appeal, he did raise them in his motion to withdraw his guilty plea filed in October 2013, over three years after the direct appeal proceeding had concluded. (*See* Doc. 7, Ex. 21). The Ohio Court of Appeals addressed the claims on the merits in its Judgment Entry filed December 10, 2014 affirming the trial court's decision to deny the post-appeal motion. (*See id.*, Ex. 31). Because the Ohio Court of Appeals ultimately addressed

17

the merits of petitioner's claims in that later proceeding, petitioner's failure to assert them on direct appeal did not constitute a procedural default that precludes federal habeas review under the circumstances presented by this case.

Respondent further contends, however, that to the extent the merits of his ineffective-assistance-of-trial-counsel claims were considered by the Ohio Court of Appeals in the appeal from the denial of his motion to withdraw his guilty plea, the claims are still defaulted because petitioner failed to perfect a timely appeal from the appellate court's decision to the Ohio Supreme Court. (Doc. 8, pp. 16-18, at PAGEID#: 198-200). As respondent has argued, petitioner committed a procedural default by failing to pursue a timely appeal to the Ohio Supreme Court. Although petitioner later attempted to obtain a delayed appeal with the Ohio Supreme Court, he was denied leave to pursue such an appeal. (*See* Doc. 7, Exs. 32-34). The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for leave to file a delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see also Baker v. Bradshaw,* 495 F. App'x 560, 565 (6th Cir. 2012) (citing *Bonilla* in pointing out that "[t]his court has held that violation of . . . the timeliness requirements for an appeal to the Ohio Supreme Court . . . constitute[s] adequate and independent state grounds to preclude hearing an untimely claim on the merits"). Here, as in *Bonilla* and *Baker*, because petitioner failed to pursue a timely appeal to the Ohio Supreme Court and the Ohio Supreme Court denied petitioner leave to file a delayed appeal, the state's highest court never had the opportunity to consider the merits of the ineffective-assistance-of-counsel claims alleged herein. Therefore, petitioner's grounds for relief are barred from review by this Court unless petitioner can demonstrate cause for the default and actual prejudice from the alleged constitutional errors or demonstrate that failure to consider

18

the claims will result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750; *Bonilla,* 370 F.3d at 497.

Petitioner has neither argued nor otherwise demonstrated that failure to consider his defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

However, petitioner has argued as cause for his procedural default that his mental health issues, which prevented him from filing a timely habeas petition, also prevented him from perfecting a timely appeal to the Ohio Supreme Court. As discussed above in addressing the potential statute-of-limitations bar to review, the undersigned is reluctant to find on the basis of the present record that petitioner's mental incompetence or incapacity does not constitute sufficient "cause" to excuse his procedural default in this case. Given the closeness of the "cause" issue, the Court must then address the merits of petitioner's underlying claims to determine if petitioner has met the "prejudice" requirement for excusing his default. Therefore, as previously determined in addressing the statute-of-limitations defense lodged by the respondent, the undersigned concludes that it would be a more expedient and efficient use of the Court's time and resources to simply address petitioner's claims for relief on the merits without resolving whether or not petitioner's claims are procedurally barred from review.

## B. Merit-Based Review Of Petitioner's Grounds For Relief

In the petition, petitioner alleges in his three grounds for relief that his trial counsel provided ineffective assistance by (1) advising him to enter a guilty plea to charges that were subject to merger as allied offenses of similar import under Ohio Rev. Code § 2941.25; (2) failing to challenge the weapons-under-disability charge absent proof that petitioner had knowledge he

19

was under a disability with respect to a weapon that he legally possessed prior to his "involuntary

hospitalization"; and (3) failing to advise petitioner of his defenses before accepting his plea.

(Doc. 1, at PAGEID#: 16; *see also* Doc. 21, p. 2, at PAGEID#: 295).   Petitioner has not specified

in Ground Three the "defenses" that his counsel failed to "correctly" advise him about.   In his

motion to withdraw his guilty plea, petitioner only alleged the claims set forth in Grounds One and

Two of the petition.   (*See* Doc. 7, Ex. 21).   However, petitioner has additionally suggested in his

responses to respondent's motion to dismiss that his counsel failed to adequately ensure that he

was mentally competent to enter a valid guilty plea.   (*See* Doc. 14; *see also* Doc. 18, p. 7, at

PAGEID#: 279; Doc. 19, p. 5, at PAGEID#: 284).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing

the ineffective-assistance-of-counsel claims that were raised by petitioner in his motion to

withdraw his guilty plea.   The court rejected the claims, reasoning in relevant part as follows:

> Rains sought to withdraw his guilty pleas on the ground that the pleas had been the
> unintelligent product of his trial counsel's ineffectiveness.   Counsel, Rains
> insisted, was ineffective in advising him to accept a plea offer that afforded neither
> an agreed sentence nor a reduction in any charge, when he could not have been
> convicted of having weapons under a disability because he did not know his
> mental-health issues made it unlawful for him to possess a firearm, and when his
> four weapons offenses—carrying a concealed weapon, improper handling of a
> firearm in a motor vehicle, discharging a firearm on or near prohibited premises,
> and having weapons under a disability—were allied offenses of similar import
> subject to merger under R.C. 2941.25.
>
> But Rains's challenge to his counsel's ineffectiveness fails in its underlying
> premises.   A conviction under R.C. 2923.13 for having weapons under a disability
> does not, as Rains argued, require proof that the offender knew that his disability
> prevented him from legally possessing a firearm.   *See State v. Johnson*, 128 Ohio
> St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, paragraph one of the syllabus; *State v.
> Feller,* 1st Dist. Hamilton Nos. C-110775 and C-110776, 2012-Ohio-6016, ¶ 9-13.
> Rains's weapons offenses were not, as he argued, allied offenses of similar import
> under the law as it existed when he was sentenced in 2009, because the commission
> of one of the offenses did not necessarily result in the commission of any of the
> other offenses.   *See State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886

> N.E.2d 181, syllabus. And the record of the proceedings leading to Rains's
> convictions do not show that his pleas were other than knowing, voluntary, and
> intelligent. Thus, we can only concur with the common pleas court's conclusion,
> implicit in its judgment overruling Rains's Crim.R. 32.1 motion, that he failed to
> sustain his burden of demonstrating that withdrawing his pleas was necessary to
> correct a manifest injustice.

(Doc. 7, Ex. 31).

This Court's review of petitioner's claims of constitutional error is limited. Under §

2254(d), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits

by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the United States
> Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at

a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

*Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an

'unreasonable application' of clearly established federal law when 'the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at

413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

21

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court has further held that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, ___ U.S. ___, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim

22

under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled

at the time of the last state-court adjudication on the merits, as opposed to when the conviction

became "final." *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at

600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the state court's

decision, the state court, the federal habeas court must "look to Supreme Court cases already

decided at the time the state court made its decision").   The writ may issue only if the application

of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed

to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision."

*McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412); *see also*

*White v. Woodall*, ___ U.S. ___, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, ___ U.S. ___,

132 S.Ct. 1181, 1187 (2012) (internal citation and quotation marks omitted)) ("[C]learly

established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the

dicta, of this Court's decisions.").   Decisions by lower courts are relevant only "to the extent

[they] already reviewed and interpreted the relevant Supreme Court case law to determine whether

a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at

600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the standard

of review to be used in deciding ineffective-assistance-of-counsel claims.   The standard is a

two-part test, requiring a showing by the petitioner that (1) his trial attorney's conduct was

constitutionally deficient; *and* (2) the attorney's deficient performance prejudiced the defense.

*See Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, petitioner had to show that his counsel's

representation fell below an objective standard of reasonableness based on all the circumstances

23

surrounding the case. *Id.* at 688. Judicial scrutiny must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred. *Id.* at 689. In determining whether or not counsel's performance was deficient, the court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.* To satisfy the second "prejudice" prong of the *Strickland* test, petitioner had to demonstrate that a "reasonable probability" exists that, but for his counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (applying *Strickland* to a claim of ineffective assistance in the guilty plea context); *see also Strickland*, 466 U.S. at 687-88, 694. The court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The court may dispose of an ineffective-assistance-of-counsel claim by finding that petitioner made an insufficient showing on either ground. *Strickland,* 466 U.S. at 697.

In this federal habeas action, this Court must employ a "doubly deferential" standard of review in evaluating the reasonableness of the Ohio Court of Appeals' adjudication of petitioner's claims under *Strickland*. *See Woods v. Daniel,* \_\_ U.S. \_\_\_, 135 S.Ct. 1372, 1376 (2015) (per curiam); *Burt v. Titlow*, \_\_ U.S. \_\_, 134 S.Ct. 10, 13 (2013); *Premo v. Moore*, 562 U.S. 115, 122-23 (2011) (quoting *Harrington*, 562 U.S. at 104-05); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Although "[s]urmounting *Strickland*'s high bar is never an easy task," *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)), the AEDPA requires that a second layer of deference be accorded the state courts' adjudication of ineffective assistance of counsel claims. The Supreme Court has explained:

24

> Even under *de novo* review, the [*Strickland*] standard for judging counsel's
> representation is a most deferential one. . . .

****

> Establishing that a state court's application of *Strickland* was unreasonable under §
> 2254(d) is all the more difficult.  The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," . . . and when the two apply in tandem,
> review is "doubly" so. . . .  The *Strickland* standard is a general one, so the range
> of reasonable applications is substantial. . . .  Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable.  The question is whether there is any
> reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689, and *Knowles*, 556 U.S. at 123);

*see also Premo*, 562 U.S. at 122-23.  Therefore, on federal habeas review, "[t]he pivotal question

is whether the state court's application of the *Strickland* standard was unreasonable," which "is

different from asking whether defense counsel's performance fell below *Strickland*'s standard."

*Harrington*, 562 U.S. at 101.

Here, without referring to *Strickland* or the two-prong standard established in *Strickland*,

the Ohio Court of Appeals rejected petitioner's ineffective-assistance-of-counsel claims because

the "underlying premises" for those claims lacked merit.  Specifically, the court rejected the

claims alleged in Grounds One and Two based on counsel's failure to challenge petitioner's

convictions for "allied offenses of similar import" and for having weapons under disability

because, as a matter of Ohio law and contrary to the petitioner's contentions, (1) the charges were

not allied offenses "under the law as it existed when [petitioner] was sentenced in 2009"; and (2)

petitioner could be convicted for having weapons under a disability even if he did not know that

his mental disability prevented him from legally possessing a firearm.  (*See* Doc. 7, Ex. 31).

Furthermore, to the extent that petitioner has additionally suggested in Ground Three that his

25

counsel failed to ensure that he had the capability to enter a guilty plea knowingly, voluntarily and intelligently given his mental health issues, the Ohio Court of Appeals expressly found that the trial record did not reflect that the guilty plea was anything "other than knowing, voluntary and intelligent." (*See id.*). Although the Ohio Court of Appeals did not explicitly refer to the two-part *Strickland* standard, which requires a showing of both constitutionally deficient performance by counsel and prejudice, the state court's adjudication of petitioner's claims is neither contrary to nor an unreasonable application of that standard.

First, it was not unreasonable for the Ohio Court of Appeals to conclude with respect to the claims alleged in Grounds One and Two that petitioner had not shown any error, much less error of constitutional dimension, by counsel in failing to raise issues governed by Ohio law, which lacked merit. The state appellate court's rulings pertaining to the underlying state-law issues are not subject to review and are entitled to deference in this federal habeas corpus proceeding. This Court has jurisdiction to review petitioner's claims only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Moreover, "because the state courts are final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters." *Bennett v. Warden, Lebanon Corr. Inst.,* 782 F. Supp.2d 466, 478 (S.D. Ohio 2011) (and cases cited therein); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.");

*Jones v. Woods*, 635 F. App'x 254, 257 (6th Cir. 2015) (citing *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005)) (in affirming the district court's denial of a habeas petition based on a claim that the petitioner's trial counsel was ineffective for failing to request a self-defense jury instruction, the Sixth Circuit emphasized that "[w]e are bound by the [state] Court of Appeals' determination that [the petitioner] was not entitled to the instruction under state law"); *Meyers v. Ohio*, No. 1:14cv1505, 2016 WL 922633, at *7 (N.D. Ohio Jan. 21, 2016) (Report & Recommendation) (citing *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988)) ("federal habeas courts are bound by decisions of intermediate state courts on questions of state law unless convinced that the state's highest court would decide the issue differently"), *adopted*, 2016 WL 916602 (N.D. Ohio Mar. 9, 2016). *Cf. Sheffey v. Bradshaw,* No. 1:14cv1329, 2015 WL 9591535, at *17 (N.D. Ohio Sept. 30, 2015) (Report & Recommendation) (finding that the petitioner's claim that the "trial court 'failed to properly apply Ohio's allied offenses statute' . . . is not cognizable . . . in a federal habeas corpus action"), *adopted*, 2015 WL 9491230 (N.D. Ohio Dec. 30, 2015); *Ragland v. Tibbals*, No. 5:12cv2526, 2015 WL 3454882, at *2, *12 (N.D. Ohio May 29, 2015) (holding that because "a federal habeas court may not consider a claim asserting a violation of an Ohio statute," the petitioner had not stated a cognizable claim to the extent that he contended "his convictions and sentence violate O.R.C. § 2941.25").[11]

---

[11] *See also Volpe v. Trim*, 708 F.3d 688, 696-704 (6th Cir. 2013) (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984), and *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)) (in assessing whether or not the multi-punishment aspect of the Fifth Amendment's Double Jeopardy Clause was violated by the failure to merge offenses under Ohio Rev. Code § 2941.25, the Sixth Circuit rejected the argument that an Ohio Supreme Court decision, which issued on December 29, 2010 and established a new test for determining whether charged offenses were "allied offenses of similar import," applied retroactively; in so ruling, the court also pointed out that under the well-established Supreme Court precedents governing the federal constitutional question, "[i]f it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end," and "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes"). In this case, the petitioner's conviction became final by the conclusion of direct review in September 2010, *before* the Ohio Supreme Court issued the decision establishing the new test for determining whether or not offenses were subject to merger under Ohio Rev. Code § 2941.25. Therefore, the state appellate court's conclusion in this case that cumulative

With respect to any additional claim alleged in Ground Three regarding petitioner's mental competency to enter a valid guilty plea, such a claim is belied by the transcript of the plea and sentencing proceedings. As the Ohio Court of Appeals reasonably found, there is simply no evidence in the trial record to suggest that at the time petitioner entered his plea, he lacked the mental capacity to make a voluntary or intelligent decision as to whether to plead guilty or proceed to trial.

Indeed, upon review of the transcript of the plea-taking hearing, it is clear that petitioner understood and appropriately responded to all of the court's questions, which were asked to ensure that petitioner was entering a knowing, intelligent and voluntary plea with understanding of the nature of the charges, the rights he was giving up, and the maximum penalties he faced. (*See* Doc. 7, Trial Tr. 7-29, at PAGEID#: 147-69). Petitioner expressly acknowledged that he was taking medication to treat his mental health condition; that the medication helped him "focus and understand what's going on here"; and that he was "satisfied" with his counsel, who had "explained everything" to him and had "answered all [his] questions." (*Id.*, Trial Tr. 10-11, at PAGEID#: 150-51). Petitioner also affirmed that he had read the "plea form" and had gone over it "in detail" with his counsel prior to the hearing. (*Id.*, Trial Tr. 24-25, at PAGEID#: 164-65). When asked by the court if he understood the form, "what it says, and what it means," petitioner responded: "Yes, Your Honor, I do. I understood all of it. I'm very scared of it." (*Id.*, Trial Tr. 25, at PAGEID#: 165). Petitioner nevertheless affirmed that he had signed the plea form of his "own free will" and stated that he still wanted to plead guilty to the charges. (*Id.*, Trial Tr. 25-26, at PAGEID#: 166). Petitioner also stated that he understood that he faced a maximum

---

punishments were permissible based on Ohio law in effect when petitioner was sentenced is entitled to deference and does not trigger any federal constitutional concerns.

28

aggregate prison sentence of seventeen and one-half years on the criminal charges "plus fines of $35,000" and only expressed concern that he did not have the funds to pay the fine.  (*Id.*, Trial Tr. 15-17, at PAGEID#: 16-17, at PAGEID#: 156-57).  When petitioner later asked the court when he would be sentenced and "how much time" he would be "getting," the court responded that sentencing would occur later after another psychiatric report was completed for purposes of determining whether petitioner should be placed in a hospital or prison following sentencing; the court also stated with respect to the sentence to be imposed: "I'm not sure yet.  I got to see what the reports say."  (*Id.*, Trial Tr. 20-21, at PAGEID#: 160-61).

Finally, it appears from the record that petitioner's counsel was well aware that petitioner's competency posed "a concern during this case."  (*See id.*, Trial Tr. 26, at PAGEID#: 166).[12] Although petitioner had initially been deemed incompetent to stand trial, his competency was restored by the time of the plea hearing, and counsel averred at that hearing that he had "not seen any indications that . . . would obligate [him] to have th[e] Court have [petitioner's] competency examined again."  (*Id.*, Trial Tr. 26, at PAGEID#: 166).  The transcript of the sentencing hearing held a month later supports counsel's assessment as it reflects that petitioner was still "restored to competency," able to understand all that took place in that subsequent proceeding with the mental capacity to assert on his own his right to appeal the trial court's judgment.  (*See id.*, Trial Tr. 31-41, at PAGEID#: 171-81).

Accordingly, in sum, upon review of the trial record and under the doubly-deferential standard of review required to be applied in this case, the undersigned concludes that petitioner has not demonstrated the Ohio Court of Appeals' adjudication of his ineffective-assistance-of-counsel

---

[12] Apparently, petitioner was incompetent to stand trial "for around a year on this case," but failed to qualify for the defense of "not guilty by reason of insanity."  (*See* Doc. 7, Trial Tr. 32, at PAGEID#: 172).

claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103. Because the Ohio court's adjudication of the Sixth Amendment issues is neither contrary to nor involves an unreasonable application of *Strickland*, it is **RECOMMENDED** that respondent's motion to dismiss (Doc. 8) be **GRANTED** and the petition be dismissed with prejudice because petitioner has not shown he is entitled to habeas relief based on the merits of the claims alleged in Grounds One through Three of the petition.

## IT IS THEREFORE ORDERED THAT:

1.   Petitioner's motion for leave to respond to respondent's reply to petitioner's memorandum in opposition to the motion to dismiss (Doc. 18) is **GRANTED**.

2.   Petitioner's motion for appointment of counsel (Doc. 13) is **DENIED** as moot.

## IT IS THEREFORE RECOMMENDED THAT:

1.   The respondent's motion to dismiss (Doc. 8) be **GRANTED** and petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice.

2.   A certificate of appealability should not issue with respect to any of the grounds for relief alleged in the petition because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.   With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should

**DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See*

Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  *10/20/16*

Karen L. Litkovitz
United States Magistrate Judge

31

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JERRY RAINS,                                         Case No. 1:16-cv-180
    Petitioner,

                                Black, J.
    vs.                                              Litkovitz, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

32